**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SHANE RYAN LILLY,<br>Plaintiff,<br>v.<br>CITY OF AUSTIN; and ELAYNA GROVE, in her individual and official capacities, and REBEKHA MONTIE, in her individual and official capacities, and MONICA DANGLER, in her official capacity,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:26-cv-2486 |

**VERIFIED ORIGINAL COMPLAINT FOR DAMAGES AND PROSPECTIVE INJUNCTIVE RELIEF**

Plaintiff Shane Ryan Lilly files this Verified Original Complaint for Damages and Prospective Injunctive Relief against Defendants City of Austin and Elayna Grove, Rebekha Montie, and Monica Dangler as follows.

## I. INTRODUCTION

Shane Lilly has a traumatic brain injury and a seizure disorder. Major is the dog trained to alert to his auras, get him through seizures, and keep him upright on stairs and on foot. The City of Austin took that dog, held him for seventeen months, and has set his destruction for September 11, 2026, without ever doing what federal law required of it. This action is brought under 42 U.S.C. § 1983 for unreasonable seizure and for the denial of pre-deprivation process; under Title II of the ADA and Section 504 of the Rehabilitation Act for the City's refusal to treat Major as a service animal or to make an individualized assessment before killing him; and for prospective relief against the officers who can still stop the destruction.

The Fourth Amendment claim is the conversion. On March 31, 2025, a vehicle struck Major. A passerby provoked him. Defendant Grove swore it was a "provoked attack." Lilly proved

ownership the same day. The Center released the dog, then agreed to keep him only for veterinary care. Days later, without a warrant and without identifying a court, a date, or a time, the City turned that bailment into a destruction hold and later obtained an § 822.002 warrant commanding seizure from a building that already had him. There was no new exigency and no new consent. That is a seizure of an "effect." It is also the window for the due-process claim: no pre-deprivation notice or hearing before the City decided it would not give him back.

The Title II claim is based on everything that the City still has not done. Under the ADA, a public entity may exclude a service animal as a direct threat only after an individualized assessment of that animal's current behavior and of whether a reasonable modification will mitigate the risk. 28 C.F.R. §§ 35.136, 35.139. The City has not made that assessment. That is undisputed. Grove's stated reason for opposing release was that Lilly is unhoused and uses the bus. The City then stored Major in Kennel 600—a restricted row its own spokesperson called "not a healthy way to keep a dog at all." On September 8, 2026, Director Dangler wrote that "the City does not have independent legal authority to release Major or have him assessed by a third party for rehabilitation outside of that order." Title II is that authority. A Chapter 822 finding did not repeal it.

Section 504 imposes the same floor if the City of Austin takes federal money, which it does. The City's published last-resort and rescue-placement program is the program that it closed to Plaintiff. An unwritten practice of seeking destruction in every SBI file, refusing conditional release, and treating the Order as a modification-proof warrant to kill is alleged as City policy and as the personal conduct of Grove, Montie, and Dangler.

This Complaint does not ask the Court to vacate the Order of Disposition, to retry serious bodily injury, or to sit as a court of appeals. The state courts decided Texas animal-control

questions. They did not decide a claim premised on Title II of the ADA or a § 1983 claim against the City and the individual defendants. Plaintiff seeks damages for the completed seizure and process violations and for disability discrimination, and an injunction requiring Defendants to refrain from destroying Major and to release him to a qualified rescue or trainer for decompression so that a proper individualized assessment that Title II requires can occur off the isolation floor. The Order can remain. But the City and individual Defendants may not destroy the dog until they do what federal law already requires of them.

## II. NATURE OF THE ACTION

1. This is a civil-rights action arising from the City of Austin's conversion of a consensual veterinary bailment into an investigatory detention, its decision to seek destruction of Plaintiff's dog without considering his status as a service animal, and its administration of the City's animal-services program in a manner that discriminates on the basis of disability. Title II of the ADA and Section 504 impose duties on the City as a public entity that the Texas courts did not adjudicate. Plaintiff invokes those duties. He does not ask this Court to vacate, modify, or declare void any state-court judgment.

2. On March 31, 2025, Plaintiff's Belgian Malinois, Major Lilly ("Major"), was struck by a vehicle. Plaintiff brought proof of ownership and vaccination to Austin Animal Center ("AAC") the same day. City staff released Major to Plaintiff and then, at Plaintiff's request, agreed to keep Major only for veterinary care. Days later, without a warrant and without identifying a forum, date, or time, City personnel informed Plaintiff by text that the City would seek to seize Major. On or about April 9, 2025, Investigator Grove obtained a seizure warrant under Texas Health & Safety Code § 822.002 commanding seizure of Major from AAC, where he was already held. In the supporting affidavit Grove stated that Major made a "provoked attack." Major has

remained in City custody since March 31, 2025.

3. Plaintiff has traumatic brain injury with post-traumatic seizure disorder and balance and ambulation deficits. Major is trained to perform tasks related to that disability, including seizure-aura alerting, assistance with balance, walking, and walking up and down stairs through the suitcase handle on his harness, assistance with balance on wet surfaces, reduction of physical exertion to eliminate seizure trigger, pull command (i.e., assistance pulling up stairs or inclines), carrying grocery bags attached to carabiner on leash and distribute weight against the pull command, opening of doors by pressing against them and pulling Plaintiff through them, and compulsive behavior interruption (seizure response). Major can also pull a grocery cart around the store and understands the commands, "Pull, Left, Right, and Stop" to navigate the grocery store aisles. Major understands silent hand signals and beeps and buzzes from the e-collar he has. This includes Recall and Pull/Stop. Major is not replaceable for these tasks.

4. Plaintiff seeks compensatory and punitive damages for completed constitutional and statutory violations, and prospective injunctive and declaratory relief directed at the City's policies and practices, including a stay of euthanasia pending off-site decompression and an individualized Title II assessment. Plaintiff does not seek an order setting aside any state judgment.

5. This Original Complaint is supported by the Verification of Shane Lilly and by the Declaration of Shane Ryan Lilly in support of Motion for emergency temporary restraining order and preliminary injunction and accompanying exhibits, which are referred to and incorporated here as if stated herein.

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because the claims arise under the Constitution and laws of the United States, including 42

U.S.C. §§ 1983, 12131 et seq., 12203, and 29 U.S.C. § 794.

7. Plaintiff is not complaining of injuries caused by a state-court judgment and is not inviting review or rejection of any such judgment. *T.M. v. Univ. of Md. Med. Sys. Corp.,* No. 25-197 (U.S. June 18, 2026); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005). The claims are independent claims for injuries caused by Defendants' own executive conduct and by City policies that operate independently of any judicial determination.

8. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because all Defendants reside here and the events giving rise to the claims occurred in Travis County, Texas.

9. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202. Prospective relief against the City is authorized by *Ex parte Young* principles as applied to municipalities and by Title II and § 504. Section 1983 is an expressly authorized exception to the Anti-Injunction Act. The prospective relief sought runs against the City's own administrative acts and policies, not against a state-court proceeding.

## IV. RELATIONSHIP TO STATE PROCEEDINGS AND THE SUPREMACY CLAUSE

10. The Austin Municipal Court, County Court at Law No. 2, the Third Court of Appeals, and the Supreme Court of Texas decided questions arising under the Texas Health & Safety Code Chapter 822: whether Major caused serious bodily injury by attacking, biting, or mauling, and whether any exception in § 822.003(f) applied. Those courts did not decide claims against the City or the individual defendants arising under Title II of the Americans with Disabilities Act or Section 504, or the U.S. Constitution. The named Defendants here were not defendants on a civil-rights complaint. Plaintiff does not ask this Court to review the findings from the state court.

11. Title II and Section 504 regulate a different actor and a different duty. They bind

the City and its officers as the operator of an animal-services program. 42 U.S.C. §§ 12131-12132; 29 U.S.C. § 794. A public entity must modify policies, practices, or procedures to permit use of a service animal and may exclude only after an individualized assessment. 28 C.F.R. §§ 35.136, 35.139. That duty exists whether or not a state court has made an § 822.003 finding. The prospective relief sought here runs against the City's forthcoming executive act and against a City practice of treating a Chapter 822 finding as a modification-proof warrant to kill a service animal.

12. If the City contends that the Order of Disposition or Chapter 822 leaves it no room to consider off-site placement, decompression, or an individualized assessment, that municipal rule of decision is preempted. U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000). It stands as an obstacle to Title II. Plaintiff does not contend that Chapter 822 is unconstitutional or that the Order is void. He contends that state animal-control findings are not a defense to the City's independent federal duties.

13. 42 U.S.C. § 12201(b) saves state laws that provide equal or greater protection for the rights of individuals with disabilities. Chapter 822 is not such a law. It is an animal-control statute. It does not require, and the state courts did not apply, an individualized service-animal assessment. Section 12201(b) is a floor, not a shield for a less protective municipal practice. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (state animal-quarantine regime remained in force; the public entity still had to consider reasonable modifications for guide-dog users).

## V. PARTIES

14. Plaintiff Shane Ryan Lilly is a resident of Texas. At times relevant to this

Complaint, he was unhoused and has used walking and public transit as his means of transportation. Plaintiff is no longer unhoused and has access to a car and has a valid driver's license.

15. Defendant City of Austin is a Texas home-rule municipality that operates Austin Animal Center and Austin/Travis County Animal Protection. It may be served through the City Clerk or as otherwise authorized by law.

16. Defendant Elayna Grove is the Animal Protection Serious Bodily Injury Lead Investigator for the City of Austin. She is sued in her individual capacity for damages under § 1983. She is also sued in her official capacity solely for prospective injunctive and declaratory relief. An official-capacity claim is a claim against the City. She is named in that capacity so Rule 65(d)(2) binds her by name and so contempt runs to the officer who can stop or carry out the destruction. She may be served at her place of City employment or wherever she may be found.

17. Defendant Rebekha Montie is Field Services Program Manager for Austin Animal Services. She oversees animal-protection officers and has acted on Major's file, including public statements that in cases like his "the animals do pay the price" and that court-ordered euthanasia of an SBI dog is "not unusual." She is sued in her individual capacity for damages under § 1983 to the extent she personally participated in the conversion of the veterinary hold, the refusal of modification or access, or the setting or carrying out of destruction. She is sued in her official capacity solely for prospective injunctive and declaratory relief.

18. Defendant Monica Dangler is Director of Austin Animal Services. She is a final policymaker for animal-services disposition. On September 8, 2026, she stated in writing that "the City does not have independent legal authority to release Major or have him assessed by a third party for rehabilitation outside of that order." She is sued in her official capacity for prospective

injunctive and declaratory relief and in her individual capacity for damages under § 1983 to the extent she personally adopted and is executing that rule of decision on this file.

## VI. FACTS

### A. Plaintiff's Disability and Major's Tasks

19. Plaintiff has traumatic brain injury. The injury substantially limits neurological function, walking, standing, balancing, and caring for himself. He has a seizure disorder associated with the injury, including auras that precede seizures.

20. Major is a Belgian Malinois owned by Plaintiff. Major is individually trained to perform work and tasks directly related to Plaintiff's disability, including: (a) alerting Plaintiff to a seizure aura; (b) assisting Plaintiff through seizures; (c) interrupting compulsive behavior; and (d) assisting with balance, walking, and stairs.

21. Plaintiff previously paid approximately $12,000 to Lonestar Malinois for training for protection. He withdrew Major before the program ended. That incomplete professional program does not negate owner-training or actual task performance as a service dog.

22. On March 31, 2025, Plaintiff was traveling to retrieve a muzzle. The muzzle does not establish that Major was untrained as a service animal. It is consistent with a handler attempting to manage public-transit interactions while using a working service dog.

### B. March 31, 2025 — Injury, Bite, Release, and Consensual Veterinary Hold

23. On or about March 31, 2025, while Plaintiff and Major were crossing or near Montopolis Avenue in Austin on the way to Plaintiff's former residence at 6313 Felix Avenue, a hit-and-run driver struck Major. Major's leg was badly injured. He was bleeding, limping, would not walk, and would not be touched.

24. Plaintiff could not lift Major. He left Major on a couch in front of 6313 Felix

Avenue and went a short distance to retrieve his phone and call for help.

25. While Plaintiff was gone, a passerby encountered Major and called animal control. Julissa Alvarez later stopped. She was told animal control was already en route and that a response would be delayed. She and the other person chased Major to keep him out of the road and attempted to pick him up and load him into a vehicle despite his attempts to get away. During that encounter, Major bit Alvarez.

26. In her sworn Affidavit for Seizure, Grove stated that she believed Major "did on 03/31/25 make a provoked attack on Julissa Alverez resulting in serious bodily injury." The same affidavit describes the vehicle strike, the limp, the yelp, and people raising their arms to keep him from the street. Grove also later texted Plaintiff that the bite was provoked.

27. Plaintiff found a notice that Major had been taken to AAC. He went immediately, responded to APD Officer Steven Odom, produced proof of ownership and current rabies vaccination, and claimed Major. City staff granted Plaintiff the opportunity to leave with Major the same day.

28. Before leaving, Plaintiff asked AAC to keep Major so that Major could receive veterinary care for the vehicle injuries. AAC agreed. Custody from that moment was a bailment for a limited, disclosed purpose: medical care. Plaintiff did not consent to an investigatory detention, a destruction hold, or a transfer of ownership.

**C. April 1–9, 2025 — Conversion of the Bailment and the Destruction Decision**

29. Between March 31 and April 9, 2025, without a warrant, without judicial authorization, and without notice that identified a court, a date, or a time, City personnel reversed the March 31 release and converted the veterinary bailment into a seizure of the animal. The City informed Plaintiff of that decision by text message.

30. At the moment of that conversion, Major was injured, confined in a kennel, and under the City's complete physical control. He posed no immediate danger to any person on the street. There was no exigency that made a warrant or pre-deprivation process impracticable.

31. On or about April 9, 2025, Grove submitted an Affidavit for Seizure under § 822.002. Municipal Judge Olga Seelig issued a Warrant for Seizure of Animals commanding that Major be seized from AAC at 7201 Levander Loop—the facility that already had him. The warrant is a conversion of existing custody, not a street seizure.

32. The affidavit omitted facts Grove then knew about the character of that custody: (a) the City had already determined the same day that it had no basis to refuse release to Plaintiff; and (b) continued custody existed only because Plaintiff had asked for veterinary care. The affidavit did not omit the provoked character of the bite, the vehicle strike, or the corralling.

33. Texas Health & Safety Code § 822.005 is a criminal statute ("Attack by Dog"). It requires an unprovoked attack and criminal negligence in failing to secure the dog. But Lilly was not charged under § 822.005, as the State disclaimed that prosecution. The civil warrant rests on § 822.002, not on § 822.005. Plaintiff does not ask this Court to declare the later Order of Disposition void.

**D. What Followed — Alleged Only as Background**

34. The following events are alleged only so the Court understands that state proceedings occurred and ended. They are not the source of the injuries sued upon.

35. On April 15, 2025, Austin Municipal Court held a hearing. Plaintiff appeared and testified. The municipal court ordered humane destruction. Plaintiff was not aware until the hearing concluded that the City of Austin was seeking destruction of Major. Plaintiff filed a notice of appeal on April 17, 2025, and posted bond.

36. On or about July 14–15, 2025, County Court at Law No. 2 of Travis County held a *de novo* hearing and signed an Order of Disposition directing humane destruction under § 822.003(e), assessing boarding costs, and setting an appeal bond.

37. The Third Court of Appeals affirmed on February 11, 2026, in No. 03-25-00529-CV. Among other things, that court held that § 822.003 contains no general provocation defense and that the Texas statutory assistance-animal defense in § 822.006(d) applies only to a criminal prosecution under § 822.005(a). Title II of the ADA was not raised as a claim against the City or City officer and was not decided.

38. The City has scheduled destruction of Major for September 11, 2026.

39. Plaintiff asked to see Major before any destruction. On September 8, 2026, Director Dangler wrote a third party that staff were "working with the owner to arrange an opportunity to visit with Major before the end of this week." A courtesy that can be withdrawn is not process.

40. On September 8, 2026, Director Dangler sent an email to a citizen who had asked City and County officials to intervene, copied to the Mayor, the Assistant City Manager, and others and wrote that Austin Animal Services contacted Plaintiff on Friday, September 4, 2026, "regarding next steps to proceed with the court's order." She wrote that the decision to pursue the Serious Bodily Injury case "was not based solely on the circumstances of the bite itself" but on "the totality of information gathered during the investigation, including witness statements, information provided by Major's owner, and Major's previous behavioral history." She then stated: "At this stage, the Court has issued its order, and the City does not have independent legal authority to release Major or have him assessed by a third party for rehabilitation outside of that order." Noticeably absent from the email is any mention of the City's obligations under Title II of the ADA, 28 C.F.R. § 35.136, or § 35.139.

41. Dangler's statement is the City's present rule of decision. Plaintiff does not ask this Court to vacate the state Order. He alleges that Title II of the ADA independently requires the City to consider a reasonable modification—off-site decompression and an individualized assessment—and that a municipal practice of treating the Order as extinguishing that duty is preempted. U.S. Const. art. VI, cl. 2; 42 U.S.C. § 12201(b); *Crosby*, 530 U.S. at 372–73.

42. The City has moved Major into a restricted unit where volunteers are not allowed. Plaintiff is informed and believes the air conditioning in that unit has not worked since March 2026, through the Central Texas summer.

43. Isolating a service animal in an uncooled, no-volunteer unit days before a scheduled killing is part of the City's administration of its animal-services program. It is alleged as City conduct, not as a request that this Court review the state Order of Disposition. Behavior observed in that setting is kennel stress the City created. It is not the baseline for a Title II assessment.

44. Plaintiff has not obtained a veterinary declaration in the time available before the scheduled destruction. He does not tender a clinical diagnosis of Major, as he has been denied access to Major. Plaintiff alleges the following as lay observation and public record: Major has been in City custody since March 31, 2025; he is in a restricted unit closed to volunteers; staff have described that housing as "not a healthy way to keep a dog at all";[1] upon information and belief, including responses to public information requests, the unit is reported to have lacked working air conditioning since March 2026. Those facts go to the setting in which any "current behavior" would be observed.

45. Peer-reviewed shelter-medicine literature concludes that formal in-shelter behavior

[1] Austin American-Statesman, Austin dog spent 500 days isolated as his owner fought euthanasia. He'll still be put down (Sept. 2, 2026), available a https://www.statesman.com/news/local/article/austin-dog-euthanasia-major-shelter-22403143.php (last visited Sept. 9, 2026).

evaluations are not validated predictors of a dog's behavior outside the kennel and are, statistically, no better than chance at identifying future problem behavior in a home. Gary J. Patronek & Janis Bradley, *No Better Than Flipping a Coin: Reconsidering Canine Behavior Evaluations in Animal Shelters*, 15 J. VETERINARY BEHAV. 66 (2016). Plaintiff offers that literature as among the "best available objective evidence" 28 C.F.R. § 35.139(b) requires a public entity to consult—not as an expert report on this animal.

46. A qualified off-site placement is available to conduct this assessment. That placement is the requested reasonable modification. It is how the City can obtain an individualized assessment that satisfies federal law in a setting other than the isolation unit. Plaintiff does not allege that any trainer has already completed that assessment.

**E. The City's Program, Policies, and Disability-Based Rationale**

47. The City operates an animal-services program that includes impoundment, veterinary care during impoundment, behavioral evaluation, disposition, a published no-kill policy, a Right to Rescue process, and rescue-partner placement. City representations include that euthanasia is a last resort.[2]

48. Montie is on Major's file. Upon information and belief, she and Grove participate in the AAC's standing practice, in SBI and Chapter 822 matters, of seeking destruction, refusing conditional release or trainer placement, and treating the handler's housing and transit use as reasons not to modify disposition. That practice is inconsistent with the City's published last-resort/rescue-placement program and stated No-Kill Policy and is alleged as a City custom and as the personal conduct of Grove and Montie.

[2] Ordinance Change FAQs, available at https://www.austintexas.gov/animal-services/ordinance-change-faqs (last visited Sept. 8, 2026) (restating the City of Austin's "No Kill Policy"); *see also* Amended Ordinance, https://services.austintexas.gov/edims/document.cfm?id=422776 (last visited Sept. 8, 2026).

49. At no point after March 31, 2025, did the City conduct an individualized assessment of Major as a service animal, consider a reasonable modification of routing him to a trainer or rescue partner for decompression and evaluation off-site, or apply 28 C.F.R. §§ 35.130(b), 35.130(h), 35.136, or 35.139. Plaintiff presented a written offer to take Major from AAC to a third-party trainer for rehabilitation. The City did not engage with that offer as a modification of its destruction practice.

50. During impoundment, the City refused requested veterinary care—including bloodwork, vaccinations, and check-ups—citing a blanket policy that it would not accommodate those requests for an animal in this hold status.

51. At the *de novo* hearing, Grove testified that she opposed release in substantial part because Plaintiff is unhoused and would have Major around the public more than he might otherwise be, including while riding public transit; that she would "be nervous about [Major] taking public transportation"; and that Major "not living in a solid dwelling would set him up for failure." She also testified that Belgian Malinois are a "very powerful breed" known to "chase and take down people." Those sentences are recited in the memorandum and opinion of the Third Court of Appeals in *Lilly v. State*, No. 03-25-00529-CV (Tex. App.—Austin Feb. 11, 2026). They cannot be squared with Grove's own seizure affidavit, which described a provoked bite by a dog that had just been hit by a vehicle, was limping, and yelped before it bit.

52. At the time of the events in question, Plaintiff did not drive. Walking and public transit were how he navigated Austin. The City's stated rationale for recommending destruction was, in substantial part, the manner in which a disabled handler must use a service animal in public.

53. After Plaintiff asserted disability-related objections, City employees communicated with him about the impending destruction date in a manner that taunted, intimidated, or interfered

with the exercise of ADA rights.

54. Grove testified that Plaintiff told her Major had previously bitten other people five or six times. Plaintiff disputes that characterization and will testify to what he actually said. Shelter staff later described kennel-side aggression. Plaintiff alleges those facts because the City will rely on them for a "direct threat" defense; they do not defeat a claim that the City never performed the individualized assessment the regulations require.

55. Plaintiff is no longer unhoused. He has access to a car and a valid Texas driver's license.

## VII. CLAIMS FOR RELIEF

**COUNT I — Fourth Amendment Seizure 42 U.S.C. § 1983 (Against Grove, Montie, and the City)**

56. Plaintiff realleges paragraphs 1 through 55.

57. Major is Plaintiff's property and a Fourth Amendment "effect." A seizure occurs upon meaningful interference with possessory interests. *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). Killing or holding a dog for destruction can be a seizure. *Ramirez v. Killian,* 113 F.4th 415 (5th Cir. 2024).

58. On March 31, 2025, the City seized Major, then released him—an executive determination that it had no lawful basis to refuse return. Plaintiff then consented only to a veterinary bailment. Consent defines the scope of a seizure. The City exceeded that scope between March 31 and April 9 by converting the bailment into an involuntary destruction hold without a warrant, without exigency, and without process.

59. No immediate-danger exception applied. Major was kenneled, injured, and under complete control. Under the reasoning recognized in *Ramirez*, 113 F.4th 415, this kind of seizure is not reasonable where the animal poses no immediate danger and the interference is avoidable.

60. Plaintiff challenges the pre-warrant conversion and the affidavit insofar as it was misleading as to why the City still had the dog. Plaintiff does not allege that Grove omitted provocation from the affidavit. She wrote "provoked attack" in her affidavit, but she omitted that the City had tried to release the dog back to Plaintiff and had held onto Major at Plaintiff's request so that he could continue recovering from his injuries. Plaintiff does not ask this Court to declare the later Order of Disposition void.

61. The City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the conversion of consented veterinary holds into destruction investigations, the omission of known exculpatory classification facts from SBI affidavits, and the absence of any service-animal protocol in impoundment are policies, customs, or practices of the City, or were undertaken by an official with final policymaking authority over animal-services detention. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

62. Grove and Montie acted under color of state law and are not entitled to qualified immunity. The right to be free from a seizure of a dog that exceeds the scope of consent, and the right to be free from a warrant affidavit that omits known material facts, were clearly established.

63. Plaintiff has been damaged by loss of use of a service animal during the unlawful detention, consequential costs of fighting that detention, emotional distress, and other compensable harm. He seeks punitive damages against Grove and Montie.

**COUNT II — Fourteenth Amendment Procedural Due Process 42 U.S.C. § 1983 (Against Grove, Montie, and the City) ; In the Alternative, Limited to March 31–April 9**

64. Plaintiff realleges paragraphs 1 through 55. This Count is limited to the City's executive deprivation between March 31 and April 9, 2025. It does not challenge the adequacy of any later judicial hearing.

65. Plaintiff had a property interest in Major under Texas law. The City recognized that

interest on March 31 when it released him. The City then deprived Plaintiff of that interest by converting the bailment and deciding to seek destruction, announcing that decision by text without identifying a forum, date, or time.

66. Grove and Montie acted under color of state law and are not entitled to qualified immunity for their violations of Plaintiff's procedural due process rights.

67. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), pre-deprivation process was required. The private interest was ownership of a living service animal. The risk of error was high because the City's own investigator had called the bite provoked and the City had already treated return as the baseline. Additional process—notice of the issues and a chance to be heard before the City locked in a destruction path—had high value and low cost. The dog was already confined.

68. The deprivation was predictable, pre-deprivation process was feasible, and officials acted within delegated authority.

69. This Count is pleaded solely as an alternative and supplement to Count I for the same nine-day executive window. Plaintiff does does not seek invalidation of any state-court order.

**COUNT III — Title II of the ADA 42 U.S.C. § 12131 et seq. (Against the City, Grove, Montie, and Dangler in their official capacities)**

70. Plaintiff realleges paragraphs 1 through 55.

71. The City is a public entity. 42 U.S.C. § 12131(1). Plaintiff is a qualified individual with a disability. Major is a service animal under 28 C.F.R. § 35.104 because he is a dog individually trained to perform tasks directly related to Plaintiff's disability. No certification or documentation of completion of a professional program is required. 28 C.F.R. § 35.136(f).

72. The City's animal-services program—impoundment, veterinary care, behavioral evaluation, disposition, no-kill / Right to Rescue pathways, and rescue-partner placement—is a service, program, or activity of a public entity.

73. The City may not defend this Count by pointing to the Order of Disposition. That Order decided Texas statutory elements. It did not extinguish the City's obligations under Title II of the ADA. A practice of treating the Order as a *per se* exclusion of a service animal from rescue-placement and from an individualized assessment is the City policy this Count challenges. *Johnson v. Gambrinus Co*., 116 F.3d 1052 (5th Cir. 1997); *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002).

74. The City discriminated against Plaintiff by reason of disability, and excluded him from the benefits of that program, by: (a) refusing to consider Major's service-animal status at any point in disposition; (b) refusing the reasonable modification of off-site trainer or rescue placement for decompression and then assessment; (c) refusing veterinary care during impoundment under a blanket policy with no individualized consideration; (d) conducting no individualized safety assessment under 28 C.F.R. §§ 35.130(h) and 35.139 in a setting other than the isolation unit the City created; (e) relying on Plaintiff's housing status and necessary use of public transit—consequences of his disability—as reasons to destroy the animal that performs disability-related tasks; (f) moving Major into a restricted, volunteer-barred unit and, upon information and belief, holding him there without functioning air conditioning since March 2026; and (g) refusing Plaintiff access to the animal before the scheduled destruction.

75. An assessment in the restricted unit after seventeen months measures kennel stress that the City created would not yield a proper or valid assessment for purposes of Title II. The modification that Plaintiff requests is transfer to a qualified placement for decompression, then assessment in that setting.

76. The Director's September 8 statement that the City lacks "independent legal authority" to permit a third-party assessment is the policy this Count challenges. It is also an

incorrect statement of the law. It is not a request that the state Order be set aside. Plaintiff demands that the City perform the Title II duty that Congress has obligated the public entity to perform.

77. Section 35.139(b) assigns the City—not Plaintiff—the duty to make an individualized assessment based on current knowledge or the best available objective evidence, including whether a modification will mitigate any risk. *Johnson v. Gambrinus Co*., 116 F.3d 1052 (5th Cir. 1997). It is undisputed that the City has not made that assessment. Director Dangler has stated the City lacks "independent legal authority" to permit a third-party evaluation. She is wrong. The literature cited above is why an isolation-unit snapshot after seventeen months is not the evidence the regulation describes. The modification requested is off-site decompression and then assessment in that setting.

78. This Count does not ask the Court to find that Major will not bite, to vacate the Order of Disposition, or to appoint a special master. It asks the Court to require the City to do what Title II already requires of a public entity before it treats a service animal as an unmitigable direct threat.

79. A public entity "shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a). The authorized response to an out-of-control service animal is removal from the premises after the handler has a chance to take effective action. 28 C.F.R. § 35.136(b). Destruction is not the regulatory remedy.

80. Direct-threat exclusion under § 35.139, if available at all, requires an individualized assessment based on current medical knowledge or the best available objective evidence. It authorizes exclusion, not unassessed destruction, and it does not authorize decisions based on breed stereotypes or on the fact that a disabled handler uses transit.

81. Every act sued upon occurred after Major was confined and the scene was secure.

82. Compensatory damages are available because the City acted with deliberate indifference to, or intentional discrimination against, Plaintiff's federally protected rights. The City knew of the disability and still disregarded its obligations under the ADA.

83. Defendants Grove, Montie, and Dangler are named on this Count in their official capacities only as the officers who control Kennel 600 and who have stated that they will destroy Major. Plaintiff seeks prospective injunctive relief against them in their official capacities.

84. This Count was not litigated in the § 822.003 proceeding. The City, Grove, Montie, and Dangler were not parties. The only disability issue decided in state court was a Texas statutory defense to a criminal prosecution that never occurred. Title II is an independent federal claim against the City's administration of its own program.

**COUNT IV — Rehabilitation Act § 504 29 U.S.C. § 794 (Against the City, in the alternative)**

85. Plaintiff realleges paragraphs 1 through 55.

86. Upon information and belief, AAC or the City department that administers it receives federal financial assistance. Section 504's standard is materially the same as Title II's.

**COUNT V — ADA Retaliation, Coercion, and Interference 42 U.S.C. § 12203; 28 C.F.R. § 35.134 (Against the City)**

87. Plaintiff realleges paragraphs 1 through 55.

88. Plaintiff engaged in protected activity by identifying Major as a service animal, requesting modifications, and asserting disability-related objections in and after the state proceedings.

89. The City intimidated, coerced, threatened, or interfered with that activity by taunting communications about the destruction date and by treating the assertion of disability as irrelevant to executive disposition decisions.

## VIII. CONDITIONS PRECEDENT AND LIMITATIONS

90. No administrative exhaustion is required for Title II damages claims. The § 1983 and ADA limitations periods, borrowing Texas's two-year personal-injury period, have not expired. The March 31–April 9, 2025 seizure is within two years of this filing.

## IX. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Enter judgment against Defendants on the Counts above;

B. Award compensatory damages against the City and Grove and Montie for the pre-warrant seizure and for the ADA, § 504, and § 12203 violations, including loss of use of a service animal, consequential economic harm, and emotional distress;

C. Award punitive damages against Grove in her individual capacity;

D. Award reasonable attorneys' fees, costs, and expenses under 42 U.S.C. §§ 1988 and 12205;

E. Declare that (1) Title II and Section 504 independently require the City to make an individualized assessment of Major under 28 C.F.R. §§ 35.136 and 35.139 before destroying him, and that a municipal practice of treating the Order of Disposition as extinguishing that duty violates those statutes and (2) the conversion of the March 31, 2025 veterinary hold into an involuntary destruction hold was a seizure of Plaintiff's effects under the Fourth Amendment.

F. Issue prospective declaratory and injunctive relief against the City of Austin and against Elayna Grove, Rebekha Montie, and Monica Dangler in their official capacities, and against their officers, agents, and employees acting in concert with them, requiring them to: (1) adopt and follow a written protocol for identifying and accommodating service animals in impoundment and disposition; (2) refrain from euthanizing Major pending a reasonable modification consisting of transfer to a qualified off-site placement for a decompression period, followed by an individualized assessment under §§ 35.130(h), 35.136, and 35.139 of his behavior in that setting—not in the restricted AAC unit in in the animal-services program; (3) designate an ADA coordinator and publish a grievance procedure as required by 28 C.F.R. § 35.107; (4) refrain from categorically excluding animals from the City's rescue-placement and Right to Rescue pathways on the basis of the handler's disability, housing status, or use of public transit; (5) refrain from housing Major in a unit without functioning climate control adequate for Travis County in September, and from denying Plaintiff reasonable supervised access to him while the City holds him; and (6) refrain from euthanizing Major pending that individualized Title II

assessment as required under the ADA. This Prayer does not seek damages against Grove or Montie or Dangler in their official capacities. It does not seek vacatur of any state-court judgment.

G. Grant such other relief as is just.

Dated: September 9, 2026

Respectfully submitted,

*s/ Christina E. Ponig*

Christina E. Ponig
Attorney-in-Charge
Federal Bar No. 600217
Texas Bar No. 24041706
Claudia Wilson Frost
Federal Bar No. 859
Texas Bar No. 21671300

**FLETCHER HELD, PLLC**
808 Travis Street, Suite 1420
Houston, Texas 77002
Telephone: 713.255.0422
Facsimile: 713.255.0419
cmaccio@fletcherheld.com
cfrost.flg@fletcherheld.com